UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor<br>United States Department of Labor,<br><br>Petitioner,<br><br>v.<br><br>OPERATING ENGINEERS LOCAL 150<br>APPRENTICESHIP FUND,<br><br>Respondents. | Case No. 08 C 3075<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Susan E. Cox |
| ELAINE L. CHAO, Secretary of Labor<br>United States Department of Labor,<br><br>Petitioner,<br><br>v.<br><br>INTERNATIONAL UNION OF<br>OPERATING ENGINEERS LOCAL 150,<br><br>Respondents. | Case No. 08 C 3091<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Susan E. Cox |

**REPORT AND RECOMMENDATION**

Susan E. Cox, Magistrate Judge

This matter is before the Court on the motions to enforce subpoenas brought by Petitioner Elaine L. Chao, Secretary of Labor for the United States Department of Labor ("DOL"), who seeks to have respondent Operating Engineers Local 150 Apprenticeship Fund ("the Fund") and respondent International Union of Operating Engineers Local 150 ("the Union") (collectively "Respondents") comply with the *subpoenas duces tecum* issued by the DOL. The District Judge referred the issue to this Court to conduct the necessary proceedings and submit a report and

recommendation. For the reasons set forth herein, this Court respectfully recommends that the DOL's motions to enforce be granted in part, subject to the rulings herein.

## I. FACTS

The DOL issued two subpoenas to Respondents, one in March 2008 and another in April 2008, as part of an investigation into the election procedures of the Union. Specifically, the investigation focused on whether the August 25, 2007 election of Union officers was conducted in accordance with the provisions of Title IV of the Labor-Management Reporting and Disclosure Act of 1959[1] ("LMRDA" or "the Act"), and whether any person associated with the Union has violated or is about to violate Title IV of the Act. During the course of the investigation, the DOL sought certain records pertaining to the election.

The Fund has produced basic information regarding the classes held during the relevant period, but it has failed to comply with the requests seeking personal information of those who attended such classes, as covered in the following request:[2]

> (1) Documents identifying all journeyworkers, registered apprentices, and pre-apprentices who attended classed at the Operating Engineers Local Apprenticeship Fund ("Apprenticeship Fund") training facilities during the period January 1, 2007 through June 30, 2007. The documents should include the individual's mailing address, telephone number, and local district number, along with the name of the class attended and the date it was held.

As the Fund has already stated that it does not maintain the information requested in the remainder of the subpoena, this is the only request at issue with respect to the Fund.[3]

The Union has produced certain documents that complied with the subpoena issued to it, but

---

[1] 29 U.S.C. § 401 *et seq.*

[2] *See* Fund's statement regarding production in its April 11, 2008 letter to the DOL [dkt 1-2].

[3] *See id.*

it has failed to comply with requests seeking member telephone numbers and member identification numbers. The original subpoena contained thirteen requests, but the Court assumes, due to the briefs, that the telephone numbers and member identification numbers are the only requests at issue with respect to the Union.[4]

## II. STATUTORY BACKGROUND

The goal of Title IV of the LMRDA is to ensure that labor organizations comply with the highest ethical standards during the elections of union officers to ensure that, among other things, there is no corruption, breach of trust, or disregard for the rights of individual employees during these processes.[5] Included among the provisions of the LMRDA is the notion that every member "shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal."[6]

Under the LMRDA, the DOL's Secretary of Labor has broad power to conduct administrative investigations to discover probable violations of the Act. Specifically,

> The Secretary shall have power when [s]he believes it necessary in order to determine whether any person has violated or is about to violate any provision of this chapter...to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto.[7]

---

[4] Here the Court finds helpful the Union's simplification of the 13 subpoena requests served upon it: "the information originally requested by the DOL falls into three distinct categories: (I) that which the Union has already voluntarily turned over; (ii) that which the Union cannot turn over [because it does not have in its possession or it cannot obtain]; and (iii) that which the Union objects to turning over...includ[ing] telephone numbers and member identification numbers." See Union's response brief, at p 7. [dkt 19].

[5] *See* 29 U.S. C. § 401(b); *See also Wirtz v. Local 153, Glass Bottle Blowers Ass'n.*, 389 U.S. 463, 470 (1969).

[6] 29 U.S.C. § 481(e).

[7] 29 U.S.C. § 521(a).

Further, the DOL has the same broad range of investigatory powers as possessed by the Federal Trade Commission "relating to the attendance of witnesses and the production of books, papers, and documents."[8] When the DOL investigates election complaints under the LMRDA, the DOL has the authority to make a report to "interested persons or officials" concerning the facts of the investigation "or any other matter which [s]he deems to be appropriate as a result of such an investigation."[9]

### III. ARGUMENT

Respondents maintain that the individuals encompassed within this request have a privacy interest in controlling the personal information requested in the subpoenas and that the Fund has a business interest in controlling access to this information. The DOL, however, contends this information is necessary to verify that the only individuals who voted in the election were those eligible to vote and that Respondent's failure to comply with the subpoenas has impeded and continues to impede the investigation.

The Union objects to producing member telephone numbers and member identification numbers, which, in many cases, are the members' Social Security numbers. The Fund argues that because the individuals concerned have a privacy interest in controlling their personal information, this information should not be publicized, and the Fund seeks assurances that the DOL will abide by the Freedom of Information Act ("FOIA") regulations. The Fund also argues that it should not be required to comply with the subpoena issued to it because it has a business interest in controlling access to personal member information, specifically an individual's courses of study.

---

[8] 29 U.S.C. § 521(b) (*referencing* 15 U.S.C. § 49).

[9] 29 U.S.C. § 521(a).

**A. THE UNION'S CONCERNS**

The DOL contends that the information it seeks is necessary to verify that only the individuals who voted in the election were those eligible to vote. Here, the Union contends that it has already complied with the primary request at issue here, by providing the names and addresses of its members that were mailed ballots during the August 2007 officer election. Thus, the Union contends that the DOL has sufficient member contact information to move forward with its investigation and that providing unlisted member telephone numbers and member identification numbers creates a burden that weighs heavily against enforcement. The Seventh Circuit has made it clear that courts must weigh the probative value of the information sought by the subpoena against the burden resulting from enforcement of the subpoena.[10]

> Under what [is referred to] as the Morton Salt test, it is frequently said that in deciding whether to enforce, 'it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.' However, this formulation of the rule, standing by itself, is something of an overstatement, for it is also clearly recognized that disclosure may be restricted where it would impose an unreasonable or undue burden on the party from whom production is sought.[11]

Thus, in this case, it is crucial to analyze the "reasons or needs underlying the request" to verify that only the individuals who voted in the election were those eligible to vote.[12] In a union election fraud case similar to the one at hand, *Chao v. Local 743, International Brotherhood of Teamsters, AFL-CIO*, the Seventh Circuit easily concluded that the DOL investigation fell within the

---

[10] *See Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1269 (7th Cir. 1982).

[11] *Id.* at 1267 (*referring to United States v. Morton Salt Co.*, 338 U.S. 632 (1950)).

[12] *Id.* at 1269 (7th Cir. 1982).

boundaries of the LMRDA.[13] The court in that case came to such a result, in part, because of the LMRDA's "requirements that '[e]ach [union] member in good standing shall be entitled to one vote,' and [because] the union is required to institute 'adequate safeguards to insure a fair election.'"[14] Thus, here too, "[t]he [DOL's] demand for member contact information and records concerning the manner in which the union determined voter eligibility is reasonably relevant to this aspect of the investigation."[15]

The DOL maintains that the information sought is reasonably relevant under the Morton Salt test and the Court agrees. However, the DOL argues that the Union's reliance on *Dow Chemical Co. v. Allen* is misplaced and, thus, rejects the idea of balancing the probative value of the information sought against the burden of enforcement, as provided for in *Dow*.[16] The Court recognizes that an adjudicative subpoena was at issue in *Dow*, rather than an investigatory subpoena, as in the instant case. However, the Seventh Circuit has recognized that the Morton Salt test applies to both adjudicatory and investigatory subpoenas.[17] The *Dow* court noted that,

> [e]ven if both instances are governed by the Morton Salt criterion of reasonable relevance, "(t)here is, of course, a difference in that the relevancy of an investigatory subpoena is measured against the 'general purposes of (the agency's) investigation,' ... while relevancy of an adjudicative subpoena is measured against the charges specified in the complaint.[18]

In addition to telephone numbers being the best way for the DOL to contact the Union members, the

---

[13] 467 F.3d 1014, 1021 (7th Cir. 2006).

[14] *Id.* (citing, respectively, 29 U.S.C. § 481(e) and 29 U.S.C. § 481(c)).

[15] *Id.* at 1021.

[16] *See* 672 F.2d at 1269.

[17] *See id.* at 1268-1269.

[18] *See id.* at 1268 (internal citations omitted).

Court has already determined that member contact information is relevant and, therefore, the Union will be required to turn over the telephone numbers at issue. On the other hand, the request seeking member ID numbers will not be granted; when measured against the DOL's general purpose of verifying that only the individuals who voted in the election were those eligible to vote, this additional information would not significantly assist the DOL in its investigation, and in light of the identity theft issue, the probative value does not outweigh the burden of enforcement.[19] Further, the DOL does not specify why the member ID information it seeks is necessary to its investigation. Thus, the Union will be required to turn over the telephone numbers, but will not be required to turn over the member identification numbers.

### B. THE FUND'S CONCERNS

#### I. Privacy Issues

It is unclear whether the Fund has already turned over any contact information to the DOL. In any case, the Fund maintains that it is protected under the FOIA and that the disclosure of the personal information that the DOL seeks would violate the reasonable expectation that the information was for the confidential training purposes of the Fund. However, the Fund fails to cite a single case where a union is allowed to ignore a subpoena because it believes that compliance would disclose personal information about the union's members. The Fund cites a Ninth Circuit case and a District of Columbia case, each with a holding limiting the production of certain information under a FOIA request, but these cases are inapposite to the matter at hand, as neither deals with a

---

[19] *See Bell v. Michigan Council 25 of American Federation of State, County, Municipal Employees, AFL-CIO, Local 1023*, Case No. 246684, 2005 WL 356306 (Mich. Ct. App. Feb 15, 2005) (affirming $275,000 award to union members where union was negligently liable for not safeguarding the members' personnel information and this negligence facilitated the identity theft perpetrated by a third party).

subpoena.[20]  Therefore, for relevancy reasons discussed at length above, the Fund will be required to comply with the request at issue and turn over member telephone numbers to the DOL, but they will not be required to provide member ID numbers.

### ii. Business Interest

The Fund also maintains that it has a business interest in the information sought by the DOL. The Fund attempts to proffer an argument that it should not have to comply with the subpoena because the information sought regarding courses of study is, as the Fund sees it, protected as a trade secret under Illinois law.[21]  The Fund attempts to keep the information secure (by restricting access to employees through a password system), but based on the Fund's affidavit and the scant one page argument provided by the Fund to the Court on this issue, it is unclear whether the password protection system put in place by the Fund is a reasonable step to keep the list confidential, and the Fund provides little support regarding the economic value of the course list.[22]  Therefore, the Court will not further address the Fund's argument regarding the information being protected as a trade secret.

The Fund has, however, proposed two alternative plans where they are willing to provide information to the DOL.  Under one plan, the subpoenaed information would be made available for inspection, pending further assurances from the DOL that it will maintain the confidentiality of the information.  In response, the DOL points out that it is bound by federal statutes governing its compliance with requests under the FOIA and disclosure of information under the Privacy Act of

---

[20] *See Minnis v. United States Dep't of Agriculture*, 737 F.2d 784 (9th Cir. 1984); *see also People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284 (D.D.C. Aug 27, 2007)

[21] 765 ILCS 1065/2.

[22] *See Stampede Tool Warehouse, Inc. v. May*, 272 Ill. App. 3d 580 (Ill. App. 1st Dist. 1995).


1974 and, therefore, cannot agree to exempt information from disclosure under the FOIA. However, the DOL notes that Exemption 7 of the FOIA protects investigative records and information from disclosure and Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."[23] Therefore, the Fund can, should it choose, identify the applicable records as confidential and request that the records not be disclosed pursuant to Exemption 4 of the FOIA. Statutorily (as mentioned above) the DOL nonetheless may make a report to "interested persons or officials" concerning the facts of the LMRDA investigation "or any other matter which [s]he deems to be appropriate as a result of such an investigation."[24] Thus, while the FOIA exemptions should provide reassurance to the Respondents in this matter, the DOL may still disclose this information in contexts such as a criminal or civil enforcement action, or these materials could be turned over to another law enforcement agency.

Alternately, the Fund proposed a second plan whereby the DOL would return the documents to the Fund upon completion of the investigation so that the documents would no longer be in the possession of the DOL and subject to a FOIA request. Although the same statutory issues are applicable to both plans, the Court finds that the second plan is the most prudent approach regarding the lists containing the individual's courses of study. Therefore, the Fund is required to turn over the information relating to the individual's courses of study, as this relates to the general investigatory purpose of verifying that only the individuals who voted in the election were those eligible to vote, and the Fund may choose whether to designate any documents as confidential and whether to request any FOIA exemptions. After the DOL concludes its investigation, such course lists provided by the

---

[23] *See* 5 U.S.C. § 552(b)(7); 5 U.S.C. § 552(b)(4).

[24] 29 U.S.C. § 521(a).

Fund should be returned to the Fund.

## IV. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Petitioner's motion to enforce against the Fund [dkt 6] and Petitioner's motion to enforce against the Union [dkt 1] be granted in part, subject to the rulings herein. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served.[25] Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation.[26]

Date: **August 26, 2008**

                                            U.S. Magistrate Judge
                                            Susan E. Cox

---

[25] Fed.R.Civ.P. 72(a).

[26] *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).